# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-14-00402-CR

**Rex Allen Nisbett, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 13-0481-K26, THE HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rex Allen Nisbett of murdering his wife, Vicki Nisbett, back in 1991, *see* Tex. Penal Code § 19.02(b)(1), (2), and assessed his punishment at confinement for 42 years in the Texas Department of Criminal Justice, *see id.* § 12.32. On original submission, we concluded that the State's failure to present evidence demonstrating how Vicki died—to show that she was in fact dead, that appellant perpetrated a specific act causing her death, and that he did so with the requisite culpable mental state—rendered the evidence insufficient to support appellant's conviction. *Nisbett v. State*, No. 03-14-00402-CR, 2016 WL 7335843, at *16–17 (Tex. App.—Austin Dec. 15, 2016) (mem. op., not designated for publication), *rev'd*, 552 S.W.3d 244 (Tex. Crim. App. 2018).

On discretionary review, the Court of Criminal Appeals disagreed with our conclusion and instead concluded that, even without evidence of how Vicki died, the evidence sufficed to infer Vicki's death, infer that appellant caused it, and infer that he did so with the requisite culpable mental state. *Nisbett v. State*, 552 S.W.3d 244, 262–268 (Tex. Crim. App. 2018). Therefore, the court concluded that the evidence was sufficient to infer that appellant was guilty of murder. *Id.* at 268. The court reversed our judgment and remanded the case for us to address appellant's remaining points of error. *Id.* On remand, we will affirm the trial court's judgment of conviction.

## BACKGROUND

The factual background and procedural background of this case are fully discussed in the prior opinion of this Court, *see Nisbett*, 2016 WL 7335843, at *1, 3–8, 10–13, and will not be repeated here. We discuss further background details only as necessary to address the remaining points of error raised by appellant.

## DISCUSSION

In his remaining points of error, appellant asserts that the prosecutor violated his constitutional right to remain silent during jury argument as well as during direct examination of a State's witness. In addition, he complains about the trial court permitting an expert witness to testify absent proper notice under the discovery statute.

### Jury Argument

In his second point of error, appellant argues that the prosecutor violated his right to remain silent during jury argument by impermissibly commenting on appellant's failure to testify.

Specifically, during final jury argument in the punishment phase of trial, the prosecutor commented that appellant would not reveal the location of his wife's body:

> One of the things that I do want you to take into consideration is the one thing that the Johnson family wants out of this, and the only thing they've ever wanted. And it's not blood, and it's not vengeance. It's that they want Vicki back. They want to give her a Christian burial. And they want her remains, and they want to be able to have a memorial service and funeral that they've never had for her. That's the one thing they've asked for. They didn't come here for vengeance and out for blood and out for him to deal with a life sentence. That's never been what's in their hearts. What was in their hearts was they just want Vicki back, and he refuses to do that. So I hope you'll remember that --

Defense counsel objected to this argument as "commenting on [appellant's] right to silence, right not to testify." The trial court sustained the objection and then, on defense counsel's request, instructed the jury to disregard the comment. The trial court then denied defense counsel's request for a mistrial.

When the trial court sustains a defendant's objection to an allegedly improper argument and gives an instruction to disregard but denies the defendant's request for a motion for mistrial, the only issue to consider on appeal is whether the trial court erroneously denied the motion for mistrial. *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011); *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). We review a trial court's decision to deny a motion for mistrial for an abuse of discretion. *Archie*, 340 S.W.3d at 738–39; *Hawkins*, 135 S.W.3d at 77; *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A trial court abuses its discretion when the court's decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *accord*

3

*McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). We must uphold the trial court's ruling on a motion for mistrial if it is within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Wead*, 129 S.W.3d at 129.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Ex parte Lane*, 303 S.W.3d 702, 712 (Tex. Crim. App. 2009) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). Proper jury argument must generally fall within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to argument of opposing counsel; and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). The fact that a defendant did not testify does not fall into any of these categories and may not be the subject of comment by the prosecution. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

Further, a comment on a defendant's failure to testify violates both the federal and state constitutions as well as Texas statutory law. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08; *see also Griffin v. California*, 380 U.S. 609, 615 (1965). However, the implication that the State's comment referred to the defendant's failure to testify must be "a clear and necessary one." *Randolph*, 353 S.W.3d at 891; *accord Bustamante*, 48 S.W.3d at 767. Indirect or implied allusions, or language that might be construed as such, do not constitute a violation. *Randolph*, 353 S.W.3d at 891; *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008); *see Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995) ("A mere indirect or implied allusion to the

4

accused's failure to testify does not violate appellant's rights," and "if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper."). Indeed, "[i]t is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify *only if* the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify." *Wead*, 129 S.W.3d 130 (emphasis added); *accord Bustamante*, 48 S.W.3d at 765.

Thus, the test is whether the language used was manifestly intended to be, or was of such a character that the jury would necessarily and naturally take it as, a comment on the defendant's failure to testify. *Randolph*, 353 S.W.3d at 891; *Archie*, 340 S.W.3d at 738; *Cruz*, 225 S.W.3d at 48; *see Bustamante*, 48 S.W.3d at 765 (collecting cases). The context in which the comment was made must be analyzed to determine whether the language used was of such character. *Randolph*, 353 S.W.3d at 891; *Cruz*, 225 S.W.3d at 548; *Bustamante*, 48 S.W.3d at 765. Courts are not to find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for the remark is equally plausible. *Randolph*, 353 S.W.3d at 891. In assessing whether the defendant's rights have been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of its being a permissible argument. *Id.*

To evaluate whether the trial court abused its discretion in denying a motion for mistrial based on an improper jury argument in the punishment phase, the Court of Criminal Appeals has adopted a test that balances (1) the severity of the misconduct (the magnitude of the prejudicial

5

effect of the prosecutor's remarks); (2) the curative measures taken (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Hawkins*, 135 S.W.3d at 77 (applying tailored version of *Mosley* factors in context of punishment phase of non-capital trial); *see Mosley v. State*, 983 S.W.2d 249, 260 (Tex. Crim. App. 1998) (balancing three factors to determine whether improper jury argument warrants mistrial). A mistrial is the appropriate remedy only when "the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie*, 340 S.W.3d at 739 (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)); *see Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) ("A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors."); *Hawkins*, 135 S.W.3d at 77 ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

Appellant argues that the prosecutor's argument here was intended to "inflame the jury at the expense of appellant's rights" and therefore he is "entitled to a reversal." However, as we noted above, indirect or implied allusions are not sufficient to show a violation of the Fifth Amendment—the words spoken must be a clear reference to the defendant's failure to testify. *See Busby*, 253 S.W.3d at 666. The inference appellant asks us to draw here is tenuous at best. Furthermore, nothing in the record suggests that the prosecutor manifestly intended the remark to be a comment on appellant's failure to testify during punishment. Nor can we conclude that a typical jury would have naturally and necessarily understood the prosecutor's comment, in the context in

6

which it was given, to refer to appellant's failure to testify at trial. The prosecutor's comment, taken literally, was to the effect that appellant refused to disclose the location of Vicki's body to her family so they could give her a proper burial.

However, assuming *arguendo* that the prosecutor's remark was a comment on appellant's failure to testify during the punishment phase of trial, we consider the relevant factors to determine whether the trial court abused its discretion by denying appellant's request for a mistrial. *See Hawkins*, 135 S.W.3d at 77.

Concerning the magnitude of the prejudicial effect of the prosecutor's comment, we observe that, in concluding his jury argument in the punishment phase, defense counsel argued that "the punishment should fit the person" and stated:

> . . . [Appellant is] 53 years old. Okay? So whatever number you come up with is going to impact the rest of his life. The rest of his life. And we want you to go decide that number not with vengeance in your heart, but with those common elements that the preacher tells you every Sunday: [u]nderstanding, compassion.
> And I know that we have Vicki Nisbett that you're going to keep [her] in your minds as [you do] this. Please keep in your mind as well, this is not the time to express vengeance against [appellant], but show the proper care and attention that you're going to put in assessing the law here that you did in the last 10 days, that you took.
> Thank you.

After brief introductory remarks expressing appreciation to the jury for its consideration during the guilt-innocence deliberations, the prosecutor made the argument at issue.

The context of the comment reflects that the prosecutor's remark was an argument made in response to defense counsel's assertion that "this is not the time for vengeance against [appellant]." The comment by the prosecutor was a "fair response" to defense counsel's argument

7

in that it asserted that the victim's family was not seeking vengeance against appellant—which defense counsel decried—but only wanted a conclusion to the situation (the recovery of Vicki's body for a proper burial) that, under the circumstances, was unobtainable without appellant's cooperation. *See Randolph*, 353 S.W.3d at 892–93 (recognizing that comments about failure to testify are permissible if they are "fair response" to defendant's claims or assertions or if evidence in record supports prosecutor's remarks). Even assuming that the prosecutor's remark constituted a comment about appellant's failure to testify during the punishment phase, the remark was embedded within other remarks responding to opposing counsel's comments; thus, the magnitude of prejudice from the statement was diminished. *See Archie*, 340 S.W.3d at 741 (concluding that, because improper questions during final argument were embedded within other remarks that invited jury to draw legitimate inference from evidence, magnitude of prejudice was "concomitantly diminished"). Furthermore, the prosecutor's remark was brief and isolated. *See Archie*, 221 S.W.3d at 700 (noting that prosecutor's impermissible comment on failure to testify was brief). We conclude that the extent of prejudice from the prosecutor's jury argument, if improper, was not so great as to necessarily render a timely curative instruction ineffective. *See Archie*, 340 S.W.3d at 741.

We next consider the curative measures taken by the trial court. *See id.*; *Hawkins*, 135 S.W.3d at 77. After the prosecutor made the challenged statement, defense counsel objected, and the trial court sustained the objection. Then, on defense counsel's request, the court instructed the jury to disregard the comment. In addition to the oral instruction to disregard, which was given immediately after the challenged statement, the trial court included a written instruction in the jury charge instructing the jury not to "consider the fact that the defendant has not testified as a

8

circumstance against him" or to "allude to, comment on, or in any manner refer to the fact that the defendant has not testified" during deliberations on appellant's punishment. "The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Archie*, 340 S.W.3d at 741; *accord Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *see, e.g.*, *Archie*, 340 S.W.3d at 741 (considering trial court's "specific and timely" instruction to disregard improper statements as well as written instruction in jury charge reminding jurors of "their duty not to comment on or allude to the [defendant's] failure to testify" in determining that improper statements "were not so indelible" that jury would ignore trial court's instructions); *Archie*, 221 S.W.3d at 700 (concluding that oral instruction to disregard and written instruction not to consider failure to testify "sufficiently ameliorated any potential harm" from improper statements); *Hawkins*, 135 S.W.3d at 84 (noting that analysis of this factor should consider instructions given in jury charge). We conclude that the prosecutor's jury argument, if improper, was not so "offensive or flagrant" as to render the trial court's curative instructions ineffective. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000) (noting that prosecutor's impermissible jury argument was quickly followed by instruction to disregard and observing that "[o]nly offensive or flagrant error warrants reversal when there has been an instruction to disregard").

Finally, we consider the certainty of the punishment assessed absent the misconduct, or the likelihood of the same punishment being assessed. *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77. During punishment jury argument, neither party argued in favor of a particular sentence but instead put forth considerations for the jury in assessing punishment. In addition to the

evidence from the guilt-innocence phase of trial—which the Court of Criminal Appeals has determined sufficed to infer appellant's guilt—the State presented evidence in the punishment phase concerning additional assaultive conduct by appellant: a prior conviction for misdemeanor assault in 1993 and an arrest for misdemeanor assault in 2012.[1] The jury assessed appellant's punishment at 42 years' confinement, which is in the middle of the statutory punishment range for a first degree felony. *See* Tex. Penal Code § 12.32(a) (providing that punishment range for first degree felony is confinement for five to 99 years or life). Given the serious nature of the offense alone, but particularly in combination with the punishment evidence presented, we conclude that it is likely that the same punishment would have been assessed against appellant even in the absence of the State's comment. *See Archie*, 221 S.W.3d at 700.

When considering all three factors, we conclude that the trial court could have reasonably believed that its prompt instruction to disregard the prosecutor's comment, if it was improper jury argument, was effective to ameliorate any prejudice that appellant suffered from the comment. *See Hawkins*, 135 S.W.3d at 85. Thus, the trial court could have further concluded that this single instance of jury argument, if it was improper, did not rise to the level of the "narrow class of highly prejudicial and incurable errors" that require granting a mistrial. *See Ocon*, 284 S.W.3d at 884; *Hawkins*, 135 S.W.3d at 77. Accordingly, we conclude that the trial court's decision to deny appellant's request for a mistrial was not outside the zone of reasonable disagreement. Therefore,

---

[1] The record reflects that the 1993 conviction resulted from the revocation of appellant's 1992 deferred-adjudication community supervision for an assault against a male victim that did not involve family violence. The record reflects that the 2012 arrest was for a physical altercation that appellant had with a neighbor while they were drinking. Appellant was never charged or prosecuted for this assault.

we hold that the trial court did not abuse its discretion in denying the request. *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 85.

For the foregoing reasons, we overrule appellant's second point of error.

## Direct Examination of State's Witness

In his third point of error, appellant asserts that the prosecutor violated his constitutional right to remain silent by questioning Assistant Chief Deputy Richard Elliott about whether appellant had ever denied killing his wife. The record reflects the following exchange with the deputy at the conclusion of the State's direct examination:

PROSECUTOR: In the 22 and a half years that you have worked with or dealt with Rex Nisbett, has he ever said to you "Chief, I did not kill my wife"?

CHIEF ELLIOTT: No, he has not.

The prosecutor then passed the witness, and defense counsel began cross examination.

To preserve a complaint for appellate review, a party must have raised the complaint to the trial court by a timely request, objection, or motion that states the specific grounds for the ruling sought. Tex. R. App. P. 33.1(a)(1)(A); *see Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). At trial, appellant did not object to the prosecutor's question to Chief Elliott or his answer. Thus, the record reflects that appellant failed to properly preserve for appellate review his complaint about the alleged violation of his Fifth Amendment right to remain silent during witness questioning.

11

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). Accordingly, because the record reflects that appellant failed to properly preserve this complaint for appellate review, we overrule his third point of error.

## Notice of Expert Witness

In his fourth point of error, appellant asserts that the State failed to give proper notice pursuant to the discovery statute of an anticipated expert witness, Megan Clement, a forensic scientist employed at Cellmark Forensics. Consequently, appellant maintains that the trial court erred in permitting her to testify.

We review the trial court's decision to permit expert testimony absent proper notice under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).

Before trial, appellant filed a *Motion and Request for Notice of State's Expert Witnesses*. Although the trial court did not rule on appellant's motion, the State subsequently filed multiple notices of its intent to use expert witnesses. In three of the notices, the State listed "Megan Clement: Tarrant County Medical Examiner who collected evidence." At trial, appellant objected to Clement's testimony because no address for Clement had been given and, at the time of trial,

12

Clement was no longer employed at the Tarrant County Medical Examiner's office. The State

responded that appellant had not obtained a ruling on his motion requesting notice. The trial judge

indicated that it was the court's "custom" to "never to sign the order, just to grant it orally or not."

The judge further advised that he did not "have an independent recollection" of ruling on the motion

but "we can certainly look it up in the court reporter's record." Ultimately, the trial court overruled

appellant's objection and allowed Clement to testify.

At the time of appellant's trial, article 39.14(b) provided:

> On motion of a party and on notice to the other parties, the court in which an action
> is pending may order one or more of the other parties to disclose to the party making
> the motion the name and address of each person the other party may use at trial to
> present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court
> shall specify in the order the time and manner in which the other party must make the
> disclosure to the moving party, but in specifying the time in which the other party
> shall make disclosure the court shall require the other party to make the disclosure
> not later than the 20th day before the date the trial begins.

Tex. Code Crim. Proc. art. 39.14(b). At that time, article 39.14(b) was not "self-executing."[2]

*McFatridge v. State*, No. 10-08-00049-CR, 2011 WL 1334400, at *3 (Tex. App.—Waco

Apr. 6, 2011, pet. ref'd) (mem. op., not designated for publication); *Harris v. State*, 287 S.W.3d 785,

792 (Tex. App.—Houston [1st Dist.] 2009, no pet.), *abrogated on other grounds by Barrios v. State*,

283 S.W.3d 348 (Tex. Crim. App. 2009); *Tamez v. State*, 205 S.W.3d 32, 39 (Tex. App.—Tyler

---

[2] In 2015, the Legislature amended article 39.14(b) to require a party receiving a request for disclosure of expert witnesses to provide the information to the requesting party based on the request alone without an order from the trial court. *See* Act of May 22, 2015, 84th Leg., R.S., ch. 459, § 1, 2015 Tex. Gen. Laws 1774 (current version at Tex. Code Crim. Proc. art. 39.14(b)). The amendment became effective September 1, 2015, *see* Act of May 22, 2015, 84th Leg., R.S., ch. 459, § 3, 2015 Tex. Gen. Laws 1774, and did not apply in this case.

13

2006, no pet.); *see* Tex. Code Crim. Proc. art. 39.14(b). Rather, the statute allowed a trial court the discretion to order the State to disclose its expert witnesses upon request. *McFatridge*, 2011 WL 1334400, at *3; *Harris*, 287 S.W.3d at 792; *Tamez*, 205 S.W.3d at 39. Even with a request, however, a trial court order was necessary before the State was required to timely disclose its expert witnesses. *McFatridge*, 2011 WL 1334400, at *3; *Harris*, 287 S.W.3d at 792; *Tamez*, 205 S.W.3d at 39–40); *see Williams v. State*, No. 04-06-00797-CR, 2007 WL 3171335, at *2 (Tex. App.—San Antonio Oct. 31, 2007, no pet.) (mem. op., not designated for publication) ("[T]he State's obligation to disclose its expert witnesses under article 39.14(b) of [the] Code of Criminal Procedure is triggered only by a court order."); *see also In re Tibbe*, No. 03-13-00741-CV, 2013 WL 6921525, at *2 (Tex. App.—Austin Dec. 31, 2013, orig. proceeding) ("[U]nder its plain language, the disclosure provision of article 39.14(b) is triggered only by a defendant's motion requesting disclosure of the State's testifying experts *and* a trial court order.") (emphasis added).

The record in this case reflects that the State filed a motion requesting that appellant disclose his expert witnesses, and the trial court granted that motion. However, although appellant filed a motion requesting that the State disclose its expert witnesses, the record does not show that the court ever ordered disclosure, and appellant does not direct us to any place in the record where such an order was made. The record does not contain a signed order requiring the disclosure nor does the record reflect any verbal order requiring the disclosure.[3] Therefore, because there was no order granting appellant's motion requesting disclosure by the State of its expert witnesses, the trial

_____

[3] We reviewed the reporter's record as suggested by the trial court and found no oral granting of appellant's motion requesting disclosure of the State's expert witnesses.

14

court did not err in allowing Clement to testify. *See, e.g.*, *Chamberlain v. State*, No. 05-13-01213-CR, 2015 WL 3413543, at \*9 (Tex. App.—Dallas May 27, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that because record did not contain order granting appellant's request for disclosure of State's expert witnesses, trial court did not err in allowing detective to testify).

Moreover, even if the trial court had ordered the State to disclose its expert witnesses, we perceive no reversible error. *See* Tex. R. App. P. 44.2(b) (providing that non-constitutional error must be disregarded unless it affects defendant's substantial rights). Appellant had notice that Clement was a potential expert witness. Appellant complains that he "was harmed by Clement's unnoticed testimony because he was not informed that instead of testifying as a medical doctor presumably about a cause of death as a medical examiner, Clement was actually a chain of custody witness that could affect the admissibility of all of the DNA evidence in this case." This argument fails for several reasons. First, the statute does not require (nor did it at the time of appellant's trial) the State to describe the potential expert witness or the anticipated testimony. It simply requires disclosure of the name and address of the potential expert witness. The party providing notice is not responsible for the recipient's understanding (or misunderstanding) concerning anticipated testimony that results from the disclosed information. Second, as Vicki's body has never been recovered and no evidence exists showing how she died, it was unreasonable to anticipate testimony from a medical examiner regarding cause of death. Finally, Clement was listed on three of the State's notices of intent to use expert witnesses as someone "who collected evidence." Given the DNA evidence in this case, appellant should have reasonably anticipated that witnesses regarding the chain of custody

15

of the evidentiary samples subjected to DNA testing would testify—particularly a witness who was described as having "collected evidence."

Furthermore, if Clement had not been disclosed as an expert witness at all, we would review the trial court's decision to allow her to testify, despite the lack of notice, by considering whether the prosecutor acted in bad faith and whether appellant could have reasonably anticipated the testimony. *See Wood*, 18 S.W.3d at 649–50; *Martinez*, 867 S.W.2d at 39; *Tamez*, 205 S.W.3d at 39–40; *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002). Here, as we previously noted, Clement's testimony regarding the chain of custody could have reasonably been anticipated. Further, nothing in the record suggests that the State acted in bad faith when it listed Clement as a possible expert witness without her address or her current place of employment.

For the foregoing reasons, we hold that the trial court did not abuse its discretion in allowing Clement to testify. Accordingly, we overrule appellant's fourth point of error.

## CONCLUSION

Having overruled appellant's remaining points of error, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed on Remand

Filed:   November 29, 2018

Do Not Publish